# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

MICHAEL R. FANNING, as CHIEF
EXECUTIVE OFFICER OF THE
CENTRAL PENSION FUND OF THE
INTERNATIONAL UNION OF
OPERATING ENGINEERS AND
PARTICIPATING EMPLOYERS, *et al.*,

   Plaintiffs,

     v.

CAPCO CONTRACTORS, INC.,

   Defendant.

Civil Action No. 09–2239 (CKK)

## MEMORANDUM OPINION
(May 13, 2010)

Plaintiffs filed this action on November 25, 2009, against Defendant Capco Contractors, Inc. ("Capco") alleging violations of the Employee Retirement Income Security Act of 1974, as amended ("ERISA"), 29 U.S.C. §§ 1001 *et seq.* Plaintiffs are fiduciaries of two employee benefit funds, the Central Pension Fund of the International Union of Operating Engineers and Participating Employers ("Central Pension Fund") and the International Union of Operating Engineers and Pipe Line Employers Health and Welfare Fund ("Health and Welfare Fund") (collectively, the "Funds"). *See* Compl. ¶¶ 1-2. Plaintiffs claim that Capco failed to make plan contributions to the Funds as required under a collective bargaining agreement with Local Union 178 of the International Union of Operating Engineers ("Local 178") and participating agreements with Plaintiffs. *See* Compl. ¶¶ 7-12. On December 28, 2009, Capco filed its Answer to the Complaint and a [6] Motion to Transfer Venue to the United States District Court for the

Eastern District of Texas, Marshall Division, pursuant to 28 U.S.C. § 1404(a). Plaintiffs filed an opposition brief, and Defendant filed a reply. For the reasons explained below, the Court shall DENY Defendant Capco's Motion to Transfer Venue.

## I. FACTUAL BACKGROUND

The Central Pension Fund is an employee benefit plan funded according to various collective bargaining agreements between participating employers and local unions affiliated with the International Union of Operating Engineers and is administered in Washington, D.C. *See* Compl. ¶ 1. The Health and Welfare Fund is an employee benefit plan that transacts business in Washington, D.C. *Id.* ¶ 2. Capco is a signatory to a collective bargaining agreement ("CBA") with Local 178 governing wages, benefits, and terms and conditions of employment for certain employees hired by Capco who perform work covered by the CBA. *See* Answer ¶ 7. Capco is a Texas corporation with its principal place of business in Henderson, Texas. *See id.* ¶ 3. Capco is also a signatory to certain participating agreements with Plaintiffs. *Id.* ¶ 8. Plaintiffs allege that pursuant to the CBA and the participating agreements, Defendant agreed to pay Plaintiffs a certain sum of money for each hour worked or paid to Capco employees performing work covered by the CBA and/or participating agreements. *See* Compl. ¶ 10. Capco admits that it agreed to make payments under the CBA but denies that it was obligated to do so under the participating agreements. *See* Answer ¶ 10.

Plaintiffs hired auditors from the Calibre CPA Group to conduct an audit of Capco's books and records for the period of January 2005 through December 2007. Compl. ¶ 18. The results of the audit revealed that Capco owed contributions to the Central Pension Fund in the amount of $330,525.30 and the Health and Welfare Fund in the amount of $669,004.85. *Id.* The

audit report indicated that Capco had failed to report employees in covered job classifications, i.e., non-union operators. *See* Decl. of Michael R. Fanning (hereinafter, "Fanning Decl."), Ex. E (May 26, 2009 Compliance Audit Report). Cacpo denies that this review was an "audit" and claims that it failed to comply with accepted standards for audit procedures. Answer ¶ 18. Capco also contends that representatives of Local 178 have consistently represented to Capco that it would only be required to pay contributions to Plaintiffs for specific employees hired through the Local 178 hiring hall and agreed upon by the parties. *See* Answer, Aff. Defs. ¶ 1. It is Capco's position that the claim for unpaid contributions is largely attributable to employees who were not covered by the CBA. *See* Decl. of Billy Torrence ¶ 3.

Plaintiffs have attached a copy of excerpts from the CBA (also known as the "Universal Agreement") to their opposition to the motion to transfer. *See* Fanning Decl., Ex. C. The CBA states that Capco agrees to be bound by the agreements and declarations of trust establishing the Central Pension Fund and the Health and Welfare Fund. *See id.*, Art. XIV. Plaintiffs have also attached a participating agreement signed by the President of Capco, which states, "The EMPLOYER further agrees that contributions are to be paid to the Funds for all employees who work within the jurisdiction of the International Union of Operating Engineers, Local 178, whether or not such employees are members of Local 178." *See* Fanning Decl., Ex. D (Participating Agreement).

On February 19, 2010, Capco filed a separate lawsuit against the Central Pension Fund, the Health and Welfare Fund, and Local 178 in the U.S. District Court for the Eastern District of Texas. *See Capco Contractors, Inc. v. Cent. Pension Fund of the Int'l Union of Operating Eng'rs & Participating Employers*, Civ. A. No. 1:10-CV-0058 (E.D. Tex. filed Feb. 19, 2010)

(hereinafter, "Texas Lawsuit").[1] Capco alleges in that lawsuit that an agent of Local 178 represented to Capco that Local 178's occupational jurisdiction was limited to specific foremen/operators hired through the union's hiring hall. *See* Texas Lawsuit, Complaint ¶ 10. The Court takes judicial notice of the allegations in this related case.

## II. LEGAL STANDARD

Under 28 U.S.C. § 1404(a), a court may transfer a case to any other district where it might have been brought "[f]or the convenience of parties and witnesses, in the interests of justice." In considering whether transfer would be proper, the court may consider the following factors:

> [C]onvenience of the witnesses of plaintiff and defendant; ease of access to sources of proof; availability of compulsory processes to compel the attendance of unwilling witnesses; the amount of expense for willing witnesses; the relative congestion of the calendars of the potential transferee and transferor courts; and other practical aspects of expeditiously and conveniently conducting a trial.

*SEC v. Page Airways, Inc.*, 464 F. Supp. 461, 463 (D.D.C. 1978). The Court may also consider public interest considerations such as (1) the transferee court's familiarity with the governing laws and the pendency of the related actions in the transferee's forum; (2) the relative congestion of the calendars of the potential transferee and transferor courts; and (3) the local interest in deciding local controversies at home. *Greater Yellowstone Coalition v. Bosworth*, 180 F. Supp. 2d 124, 128 (D.D.C. 2001). Section 1404(a) vests discretion in the district court to conduct an individualized, case-by-case analysis. *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 29 (1988). "A plaintiff's choice of forum is ordinarily entitled to deference." *Nat'l Ass'n of Home Builders v. U.S. Envt'l Prot. Agency*, 675 F. Supp. 2d 173, 179 (D.D.C. 2009). However, where the

---

[1] Also named as a defendant in the Texas Lawsuit is a related fund, the International Union of Operating Engineers Local 178 Apprenticeship Training Fund.

plaintiff does not have a substantial connection to his chosen forum, his choice of forum is entitled to less deference. *Sierra Club v. Van Antwerp*, 523 F. Supp. 2d 5, 11 (D.D.C. 2007). To justify a transfer of venue, a defendant must establish that the plaintiffs originally could have brought the action in the proposed transferee district. *Van Dusen v. Barrack*, 376 U.S. 612, 622 (1964). The moving party also bears the burden of establishing that the considerations of convenience and the interests of justice weigh in favor of a transfer to that district. *See Int'l Bhd. of Painters & Allied Trades Union & Indus. Pension Fund v. Rose Bros. Home Decorating Ctr., Inc.*, Civ. A. No. 91-1699, 1992 WL 24036, at *2 (D.D.C. Jan. 14, 1992).

Courts give "special weight to a plaintiff's choice of forum in ERISA cases." *Flynn v. Veazey Constr. Corp.*, 310 F. Supp. 2d 186, 193 (D.D.C. 2004). This is because ERISA contains a special venue provision explicitly authorizing plaintiffs to bring actions "in the district where the plan is administered, where the breach took place, or where a defendant resides or may be found." 29 U.S.C. § 1132(e)(2). "By allowing the action to occur in the district where the plan is administered, the special venue provision makes collection efforts efficient, economical, and inexpensive for ERISA funds, fulfilling Congress's intent to protect the financial integrity of such funds." *Veazey*, 310 F. Supp. 2d at 193. "A defendant requesting a transfer of venue in an ERISA case filed in the pension fund's home district faces an uphill battle, as the defendant must persuade the court that either the convenience of the parties or the witnesses, or the interest of justice, strongly outweigh[s] the substantial deference given to a plaintiff's choice of forum in these cases." *Int'l Painters & Allied Trades Indus. Pension Fund v. Tri-State Interiors, Inc.*, 357 F. Supp. 2d 54, 58 (D.D.C. 2004).

## III. DISCUSSION

There is no dispute between the parties that this action could have been filed in the Eastern District of Texas, where Capco resides and where any breach would have occurred. *See* 29 U.S.C. § 1132(e)(2) (stating that ERISA actions may be brought where the plan is administered, where the breach took place, or where a defendant resides or may be found). Thus, the only question is whether Capco has met its burden of showing that the Eastern District of Texas is a much more convenient forum for the adjudication of this action. Capco argues that transfer is appropriate because most of the witnesses and evidence relevant to this case can be found in or near that district, whereas the only relevant connection between this case and the District of Columbia is the fact that the Funds' administrative offices are located here. In addition, Capco argues that transfer is warranted so that this action may be consolidated with the Texas Lawsuit, which raises many overlapping issues. The Court shall review Capco's contentions below.

*A.     Convenience of Witnesses and Evidence*

Capco claims that nearly all of the relevant witnesses and evidence are located in or near the Eastern District of Texas. Capco notes that all of its business records are located at its offices in Henderson, Texas. In addition, Capco's managers and at least 29 employees for whom contributions are sought are located in the Eastern District of Texas. Capco argues that to the extent that any of these witnesses are non-parties who may testify at trial, they are beyond the subpoena power of this Court, and travel costs would also be greater if this action is tried in the District of Columbia rather than in the Eastern District of Texas. Capco also contends that the District of Columbia has little connection to this case, which essentially involves a dispute over

6

the interpretation of a Texas contract involving the payment of Texas employees. *See Fanning v. Trotter Site Preparation, LLC*, 668 F. Supp. 2d 60, 64 (D.D.C. 2009) ("South Carolina has a strong interest in making decisions about what is, at bottom, a South Carolina dispute over the interpretation of a South Carolina contract involving the payment of South Carolina employees.")

Plaintiffs point out that other key witnesses and records are in fact located in the District of Columbia. For example, the most relevant documents to this case, such as the CBA and the Funds' trust agreements, are maintained in the Funds' administrative offices in the District of Columbia, as are the monthly reports submitted by Capco to the Funds. The records of Calibre CPA Group, as well as its two auditors who investigated Cacpo, are also located in this district. In addition, the Funds' employees and officers, who may be witnesses in the case, are located here.

The Court notes that the location of documents is increasingly irrelevant in the age of electronic discovery, when thousands of pages of documents can be easily digitized and transported to any appropriate forum. Moreover, the physical location of witnesses is less important when testimony may be taken by deposition (including by deposition *de bene esse*) and presented to the Court at either the summary judgment stage or a bench trial. Witnesses may also testify in this Court at trial via live videoconference. Plaintiffs have chosen this forum and do not appear to be concerned about the prospect of traveling to Texas to conduct depositions of any relevant witnesses who may be located there. Thus, it appears that transferring this action to the Eastern District of Texas would merely shift the balance of inconvenience from Capco to Plaintiffs. This Court has previously held that in an ERISA case, such a shift is insufficient to warrant a transfer to the defendant's favored venue. *See Tri-State Interiors*, 357 F. Supp. 2d at

7

57. Therefore, the Court is not persuaded that the convenience of the parties and witnesses militates in favor of transfer.

   B.   *The Texas Litigation*

Capco also argues that transfer to the Eastern District of Texas is warranted so that this action may be consolidated with the Texas Lawsuit. Capco contends that both this action and the Texas Lawsuit involve the interpretation and application of the CBA between Capco and Local 178, and adhering to Plaintiffs' choice of forum would require the parties to litigate their claims in two separate actions in two separate jurisdictions.[2] The pendency of a related action in the transferee forum weighs in favor of a transfer. *See Martin-Trigona v. Meister*, 668 F. Supp. 1, 3 (D.D.C. 1987) ("The interests of justice are better served when a case is transferred to the district where related actions are pending.") However, the Court must also consider the extent to which the cases are truly related and the possibility that the defendant is forum shopping. *See Greater Yellowstone*, 180 F. Supp. 2d at 129-30 (declining to transfer to venue with related case after evaluating differences between cases and the plausibility of forum shopping).

In support of its position that transfer is appropriate despite ERISA's special venue provision, Capco cites two ERISA cases from courts in this district in which a motion to transfer was granted due to the pendency of related action in another forum. *See Fanning v. Trotter Site Preparation, LLC*, 668 F. Supp. 2d 60 (D.D.C. 2009) (Roberts, J.); *Int'l Bhd. of Painters & Allied Trades Union & Indus. Pension Fund v. Rose Bros. Home Decorating Ctr., Inc.*, Civ. A. No. 91-1699, 1992 WL 24036, at *2 (D.D.C. Jan. 14, 1992) (Revercomb, J.). In *Trotter Site*

---

[2] The parties agree that this Court lacks personal jurisdiction over Local 178, and therefore Capco's action against Local 178 could not be transferred to this district for consolidated proceedings.

*Preparation*, the defendant had filed a separate action for declaratory judgment against the local union and the pension fund plaintiffs relating to the validity of the collective bargaining agreement. The complaint in the related action alleged that the pension fund had engaged in conspiracy and unfair trade practices under state law and was filed in the district within that state. *See* Complaint ¶¶ 50-57, *Trotter Site Preparation, LLC v. Local 470, Int'l Union of Operating Eng'rs*, No. 1:09-cv-02371-JFA (D.S.C. filed Sept. 8, 2009). In *Rose Brothers*, the defendant argued that its signature on the collective bargaining agreement was induced by fraudulent misrepresentation on the part of the local union, whom it sought to implead as a third party defendant for the purpose of raising issues of indemnification and rescission. *See* 1992 WL 24036 at *1. Plaintiffs argue that these cases are distinguishable because Capco is not seeking to rescind the CBA based on Plaintiffs' conduct or raise separate state law claims against the Funds in the Texas Lawsuit.

It appears that the basis for Capco's Texas Lawsuit is that Local 178 allegedly made representations, apparently orally, regarding the scope of the CBA, and therefore Cacpo's obligations to contribute to the Funds are limited by those representations. *See* Texas Lawsuit, Complaint ¶¶ 10-11, 14. However, as a general matter, ERISA holds employers and unions to the literal terms of their written commitments. *See Bakery & Confectionery Union & Indus. Int'l Pension Fund v. Ralph's Grocery Co.*, 118 F.3d 1018, 1021 (4th Cir. 1997). Thus, "an employer is not permitted to raise defenses that attempt to show that the union and the employer agreed to terms different from those set forth in the agreement." *Id.*; *see also Bituminous Coal Operators' Ass'n, Inc. v. Connors*, 867 F.2d 625, 634 (D.C. Cir. 1989) ("When the trustees of a pension plan created pursuant to a collective bargaining agreement sue an employer for contributions required

9

by the plan, the employer may not defend on the ground of union misconduct in negotiating the agreement.") Therefore, Capco's claims against Local 178 are unlikely to be relevant in this action. This Court is not persuaded that Local 178 is such an integral party to this collection action by the Funds that transfer to the Eastern District of Texas is warranted for the purpose of consolidation with the Texas Lawsuit.

  C. *Connection to the District of Columbia*

Capco contends in its motion that this action should be transferred because it lacks a sufficient connection to the District of Columbia. However, Congress has dictated that ERISA actions may be brought in the district where the plan is administered, and this special venue provision "makes collection efforts efficient, economical, and inexpensive for ERISA funds, fulfilling Congress's intent to protect the financial integrity of such funds." *Veazey*, 310 F. Supp. 2d at 193. In other ERISA cases where transfers have been made under 28 U.S.C. § 1404(a) due to lack of a significant nexus with this district, the District of Columbia was not the site of plan administration but rather the location of the defendant. *See, e.g.*, *Gipson v. Wells Fargo & Co.*, 563 F. Supp. 2d 149, 157 & n.2 (D.D.C. 2008); *Nat'l Air Traffic Controllers Ass'n v. Dental Plans, Inc.*, 407 F. Supp. 2d 1, 3 & n.2 (D.D.C. 2005). In light of the deference given by courts to an ERISA plaintiff's right to bring an action where the plan is administered, the Court finds the District of Columbia has a significant connection to this action.

### III. CONCLUSION

For the foregoing reasons, the Court finds that the convenience of the parties and witnesses does not weigh in favor of a transfer to the United States District Court for the Eastern District of Texas, and such a transfer is not in the interest of justice. Accordingly, the Court shall

DENY Defendant's [6] Motion to Transfer Venue. An appropriate Order accompanies this Memorandum Opinion.


Date: May 13, 2010

                                               */s/*
                                       COLLEEN KOLLAR-KOTELLY
                                       United States District Judge